WILLIAM J. HUGHES *vs.* WINONA & ST. PETER RAILROAD COMPANY.

September 8, 1880.

Master and Servant—Risks assumed by Servant.—Certain instructions of the trial court considered, and their effect, as applicable to the facts of this case, *held* to be that if an employer's unsafe and careless custom of doing business is open to observation, so that it can be readily observed by the senses, and the employe has ample and reasonable means of using his senses for the purpose of observing the custom, it is his own fault and negligence if he does not observe it, and he stands upon the same footing as if he has actual knowledge of the custom referred to, so that the risk to him from such custom is his own, and not that of the employer. This is about the same thing as saying that an employe must make reasonable use of his senses, to avoid danger and injury in the course of his employment, or, in other words, that he must not be negligent, and is a correct rule of law.

Same—Injury to Brakeman while Coupling Cars.—In this action the plaintiff was in the employ of the defendant as a night brakeman in defendant's yard at Winona, one of his duties being to couple cars. In the discharge of such duty he slipped and fell upon a pile of wet ashes, which, according to defendant's custom, had been taken out of the fire-box of a locomotive, and dropped upon the track. Plaintiff claimed that defendant was negligent, both in depositing the ashes upon the track, and in not

removing the same. No complaint is made that the track itself was not in good order and condition. The court instructed the jury that this mode of disposing of ashes was so common and long continued that it was practically the act of the company,—the defendant,—and that the company could not be heard to claim that it was only the negligence of plaintiff's co-servants. *Held*, that, in view of these instructions, the case of *Drymala* v. *Thompson*, 26 Minn. 40, has no application to the case at bar.

Appeal by plaintiff from a judgment of the district court for Winona county, where the action was tried before *Mitchell*, J., and a jury.

*Lloyd Barber*, for appellant, cited *Drymala* v. *Thompson*, 26 Minn. 40; *Wedgwood* v. *Chicago & N. W. Ry. Co.*, 44 Wis. 44; *Bessex* v. *Chicago & N. W. Ry. Co.*, 45 Wis. 477; *Ryan* v. *Fowler*, 24 N. Y. 410; *Le Clair* v. *First Div., etc., R. Co.*, 20 Minn. 9; *Laning* v. *New York Central R. Co.*, 49 N. Y. 521; *Snow* v. *Housatonic R. Co.*, 8 Allen, 441; *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282; *Ford* v. *Fitchburg R. Co.*, 110 Mass. 240; *Kroy* v. *Railroad Co.*, 32 Iowa, 357; *Muldourney* v. *Illinois Central Ry. Co.*, 36 Iowa, 462; *Way* v. *Illinois Central Ry. Co.*, 40 Iowa, 341; *Patterson* v. *Railroad Co.*, 76 Pa. St. 389; *Gibson* v. *Pacific R. Co.*, 46 Mo. 163; *Porter* v. *Hannibal & St. Joseph R. Co.*, 60 Mo. 160; *Illinois Central R. Co.* v. *Welch*, 52 Ill. 183; *Quaid* v. *Cornwall*, 13 Bush, 64; *Flike* v. *Boston & Albany R. Co.*, 53 N. Y. 549; *Plank* v. *New York Central R. Co.*, 60 N. Y. 607; *Harper* v. *Railroad Co.*, 47 Mo. 567; *Lewis* v. *Railroad Co.*, 59 Mo. 495; *Greenleaf* v. *Railroad Co.*, 29 Iowa, 14; *Railroad Co.* v. *Sweet*, 45 Ill. 197; *Railroad Co.* v. *Conroy*, 68 Ill. 560; *Brabbits* v. *Chicago & N. W. Ry. Co.*, 38 Wis. 289.

*Wilson & Gale*, for respondent.

BERRY, J. The plaintiff was employed as a night brakeman in the defendant's yard, where trains were made up, at Winona. Among other things it was his duty to assist in making up trains, and to couple cars. For the latter purpose it was necessary for him to go between cars in motion. It was defendant's custom, when necessary, to have the fire-

boxes of its engines cleared of ashes, at any place upon the track in the yard where an engine chanced to stand, when the engineer or fireman thought best to take them out. The ashes were usually allowed to remain where they were dropped upon the track from one to four hours, until removed or scattered by men employed by defendant to keep the yard in order. In attempting to couple two cars, one of which was in motion, for which purpose it was necessary for him to go between them, the plaintiff stepped upon a heap of ashes, which had been left upon the track in the manner above mentioned, and, the ashes being wet, he slipped and fell, and the moving car passed over his leg, crushing it so that it had to be amputated. He brings this action for damages, claiming that the defendant was careless and negligent in depositing the ashes upon the track, and in suffering them to remain there.

Among other matters, the court instructed the jury as follows, viz.: "Another rule of law is that if a man engage in a service, and continues in a service, with a full knowledge of the manner in which his employer conducts his business, and without objection, he is deemed, in law, to have assumed and taken upon himself all the risks naturally incident to conducting business in that way, even although it be unsafe. A man is, of course, under no obligation to investigate and examine how his employer conducts his business, for the purpose of ascertaining whether safe or not. In the absence of knowledge to the contrary, a servant has a right to presume that his employer will conduct his business safely. But if a man enters and continues in a service, with knowledge of the manner in which the business is conducted, without objection to his employer, or any promise on the part of his employer to change the mode of doing business, he does it with his eyes open, assumes the risks, and cannot recover damages, even although this mode of conducting business be careless. The same is true if the mode of conducting the business is open

and apparent, and the employe has ample and reasonable means of positive knowledge of the precise danger assumed. Hence, in this case, a material question is whether plaintiff either had positive knowledge of the custom of the railroad company in disposing of the ashes; or if it was open and notorious, and he had ample and reasonable means of positive knowledge of the fact, he would be deemed in law to have voluntarily assumed all the risks incident to the mode of conducting the business, and cannot recover even although the custom was unsafe." In another part of the charge, the court, referring to the defendant's custom of emptying ashes upon the track, instructed the jury as follows, viz.: "Did plaintiff have knowledge of this custom, or had he ample and reasonable means of positive knowledge of the custom, so that he ought to have known it? If he had, you must find a verdict for the defendant."

The plaintiff's counsel objects to those parts of the passages above quoted from the charge which instruct the jury as to the effect of the fact that an employer's mode of conducting business, though careless and unsafe, is open, and the employe has ample and reasonable means of positive knowledge of such mode. Some parts of the passages referred to, and bearing on the matter objected to, if they are detached from their context and from other parts of the charge, would be open to some criticism for looseness and inaccuracy. But if these passages are read together and as a whole, we think that they state a correct rule of law in respect to the subject of the counsel's objection. Their effect, as applicable to the facts of this case, is that if an employer's unsafe and careless custom of conducting business is open to observation, so that it can be readily observed by the senses, and the employe has ample and reasonable means of using his senses for the purpose of observing the custom, it is his own fault and negligence if he does not observe it, and he stands upon the same footing as if he had actual knowledge

of the custom referred to, so that the risk to him from such custom is his own, and not that of the employer. This is about the same thing as saying that an employe must make reasonable use of his senses to avoid danger and injury in the course of his employment, or, in other words, that he must not be negligent.

The instruction given by the court, with reference to a finding by the jury that the pile of ashes was exceptional, and of unusual size, or was left on the track an exceptional and unusual length of time, is, so far as the bill. of exceptions discloses, purely abstract, since it does not appear that there was any evidence of a state of facts which would make it applicable to the case.

The other points made by the plaintiff's counsel, with reference to his exception to certain instructions given at defendant's request, and certain refusals to instruct at plaintiff's request, rest, as it seems to us, upon a misapprehension of the case of *Drymala* v. *Thompson*, 26 Minn. 40. That was a case in which a rail had been removed from the track by employes of the company, whose business it was to keep the track in repair. The track was held to be one of the instrumentalities for the working of the road, which the company was bound to use due diligence to furnish and to maintain in a condition which would render the working of the road safe for its employes. The responsibility of the company for so furnishing and maintaining the track was placed upon the same ground as its responsibility for furnishing and maintaining its locomotives or other machinery in suitable condition. The negligence of the company's trackmen in removing the rail, without putting out proper signals to warn approaching trains, was held to be the negligence of the defendants (the trustees in possesion of the road) themselves, and for this and its consequences they were held liable. But in the case at bar, the court expressly instructed the jury that the custom of depositing and leaving the ashes upon the

track was "so common and long continued," that it was "practically the act of the company" itself, and the company could not be heard to claim that it was only the negligence of plaintiff's co-servants. As, in the absence of a positive showing to the contrary, the jury must be presumed to have followed the instruction of the court, it is apparent that this case did not present the question decided in the *Drymala Case*, viz., whether the alleged negligence which produced the plaintiff's injury was the negligence of the plaintiff's co-servants, or of their principals, the trustees before mentioned.

The *Drymala Case*, then, has no application to this case. If it appeared from the bill of exceptions (as it does not) that there was evidence that the heap of ashes was (as the court below says) of exceptional and unusual size, or was left on the track an exceptional or unusual length of time, it might then be necessary to consider the applicability here of the doctrine of the *Drymala Case*. Under the instruction of the court, the jury, in rendering a verdict for the defendant, must be taken to have found that the defendant was not guilty of negligence in depositing the ashes upon the track, and suffering them to remain there, or that, if in so doing it was guilty of negligence, then that the plaintiff was, or ought to have been, cognizant of defendant's custom to so deposit ashes upon the track and to suffer them to remain there for a time, and therefore took the risk of such negligence upon himself, by continuing in defendant's employ.

Order affirmed.