SARAH M. SHERMAN, Administratrix, *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

November 16, 1885.

**Master and Servant.**—Evidence *held* sufficient to sustain a finding of negligence on the part of defendant.

**Same—Risks of Employment—Continuing in Service—Question for Jury.**—*Held,* that whether or not it was the custom or mode of doing business of the defendant to leave frogs unprotected, so that its employes might be presumed to know that such was the custom or mode of doing business, and, by continuing in the employment, to have taken on themselves the risk incident to that way of doing it, was in this case, as the evidence stood, a question for the jury.

**Same—Refusal of Instruction—Contributory Negligence.**—That being the state of the evidence, and it tending to show that before the killing of plaintiff's intestate the defendant had adopted placing blocks between the rails as a means of protecting the frogs, an instruction asked by defendant, "that if Sherman knew that some of the rails were not blocked, and did not complain, but remained in the employ of the railroad company, although he did not know when he went in to uncouple the cars

whether the particular rail in question was blocked or not, plaintiff cannot recover," was properly refused; and it was not error in the court, in refusing the request, to say to the jury, "I think the instructions should be confined to the particular rail in question."

Appeal by defendant from an order of the district court for Freeborn county, *Farmer*, J., presiding, refusing a new trial, after a verdict for plaintiff.

*Cameron, Losey & Bunn*, for appellant, cited *Hughes* v. *Winona & St. P. R. Co.*, 27 Minn. 137; *Fleming* v. *St. Paul & Duluth R. Co.*, 27 Minn. 111; *Walsh* v. *St. Paul & Duluth R. Co.*, 27 Minn. 367; *Clark* v. *St. Paul & S. C. R. Co.*, 28 Minn. 128; *Gates* v. *Southern Minn. Ry. Co.*, 28 Minn. 110; *Morse* v. *Minn. & St. L. Ry. Co.*, 30 Minn. 465; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396; *Ladd* v. *New Bedford R. Co.*, 119 Mass. 412; *De Forest* v. *Jewett*, 88 N. Y. 264; *Mansfield* v. *McEnery*, 91 Pa. St. 185; *Naylor* v. *Chicago & N. W. Ry. Co.*, 53 Wis. 661; *McGinnis* v. *Canada Southern Bridge Co.*, 49 Mich. 466; s. c. 8 Am. & Eng. R. Cas. 135.

*Lovely, Morgan & Morgan*, for respondent.

GILFILLAN, C. J.   The evidence in this case is such as to sustain a finding that defendant was negligent in not having protected the *frog*, or the space between the main rail and guard rail, where the deceased was killed.   Such places unprotected are places of very great danger, especially to men employed in coupling or uncoupling cars, and it is the duty of a railroad company to guard its employes against the danger, if there be reasonably practicable means for doing so known to it, or which, in the use of proper diligence, intelligence, and care, may be known to it; and the evidence for the plaintiff clearly indicates devices which the jury might find to have been practicable, and reasonably adequate and inexpensive, and known, or which ought to have been known, to defendant, and which, as to this particular frog, it had omitted.   And the evidence is not such as necessarily to bring the case within the decision in *Hughes* v. *Winona & St. P. R. Co.*, 27 Minn. 137.   It tended to show such a case, but whether it made out a state of facts to make the rule there laid down controlling, was, as the evidence stood, for the jury.

There was evidence to show that, some time before deceased was

killed, the defendant adopted in the yard at Wells, where he was killed, as a means of making the frogs safe, wooden blocks, inserted and spiked down in the angle made by the rails; that this was an effectual, simple, and inexpensive device to prevent the foot becoming caught fast in the frog, wherein the danger consisted; that some of the blocks in that yard either became worn out or were removed, and others not inserted in their stead; but that these instances were so numerous as to become the rule,—as to show that the mode of doing the business at that yard was to leave the frogs unprotected to such extent that deceased must be presumed to have known it, and consequently to have taken on himself the risks incident to that mode of doing the business,—was not so clearly shown that the question could be taken from the jury.

Defendant requested this instruction to the jury: "That if Sherman knew that some of the rails were not blocked, and did not complain, but remained in the employ of the railroad company, although he did not know when he went in to uncouple the cars whether that particular rail in question was blocked or not, plaintiff cannot recover." That was clearly wrong. For if the defendant's habit, custom, or mode of doing business at that yard was to protect the frogs by blocks, —if that was the rule of its conduct,—Sherman had a right to assume, where he had not notice to the contrary, that such mode or custom had been followed in respect to any particular frog. He had a right to assume, in the absence of such notice, that the defendant had acted according to the general rule adopted by it for its business, although he may have known some instances in which it had not done so. The omission at that yard to put in the blocks, not as a general rule, but in isolated instances, would not make out a case like that of the *Hughes Case*, of an unsafe and careless custom or habit of doing business, known, or which by the use of his senses ought to be known, to an employe, in which case the employe, by continuing in the employment without objection on his part, or promise on the part of the master to change it, is held to assume the risk incident to that mode of doing the business. A single instance, or any number of instances, not amounting to a custom or mode of business, of culpable negligence on the part of the master, will not cast on the employe

the risk of subsequent or other similar acts of negligence. The court was therefore right in refusing to charge as requested.

In refusing the instruction the court stated to the jury: "I think the instruction should be confined to this particular rail." The instruction did not refer to omissions to block the rails, amounting to a rule or mode of doing the business, but to particular instances though exceptions to such rule or mode. It directed the attention of the court only to the effect on plaintiff's right to recover of Sherman's knowledge that in some particular instance one or more such blocks had been omitted. That being the point on which the court was requested to instruct, it was right in saying that the instruction should be confined to the rail where Sherman was killed; for his knowledge that that place was unsafe for want of blocks would defeat a recovery; but his knowledge that some other particular place in the yard was unsafe for the same reason would not necessarily have that effect. Possibly the ruling which the request of the defendant made it proper for the court to make may have induced the jury to infer that Sherman's knowledge of omissions to block the rails, amounting to a custom or mode of doing business, would not affect plaintiff's right to recover. If the defendant feared that result, it should have guarded against it by requesting an instruction based on that state of facts.

Order affirmed.