FABER, Respondent, vs. C. REISS COAL COMPANY, Appellant.

*March 17—April 5, 1905.*

*Master and servant: Personal injury: Assumption of risk: Expert testimony: Examination of jurors: Pecuniary interest: Remarks of counsel: Prejudicial error.*

1. Where an employee engaged in pushing tram cars on an elevated platform at a coal dock must, if he gave even slight attention to his surroundings, have observed that there was no railing on

the edge of the platform and whether the platform was sufficiently lighted at night, his continuance in the service was an assumption of the risks incident thereto arising from the negligence, if any, of the employer in failing to provide a railing or to furnish sufficient light.

2. Questions, asked of medical experts, as to whether or not injuries to plaintiff's skull and to one of his eyes were *likely* to result in recurrent troubles, or were *apt* to affect injuriously the other eye, were not improper as being conjectural.

3. Plaintiff's counsel having suggested to the court that an insurance company was pecuniarily interested in the outcome of an action for personal injuries, it was proper to inquire of a juror, on his *voir dire*, whether or not he was a stockholder in that insurance company.

4. A statement by counsel for the plaintiff that an insurance company had undertaken to pay any judgment recovered against defendant in the action, made in the presence of jurors in the course of a colloquy between the court and counsel on both sides respecting a question asked of a juror upon his *voir dire*, is *held*, under all the circumstances and in view of the instructions to the jury to disregard any such statements, not to have constituted prejudicial error.

APPEAL from a judgment of the circuit court for Calumet county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This is an appeal from a judgment rendered on a special verdict in an action for damages which plaintiff alleges he sustained through defendant's negligence. Defendant is a corporation engaged in the coal business at Sheboygan, Wisconsin. In conducting its business it maintains coal docks in that city, located on the river's edge, facilitating the business of transferring coal from boats to its docks. At the time of the accident, plaintiff, thirty-one years of age, was possessed of good health, and had theretofore been engaged in manual labor. The accident occurred on May 18, 1903. At this time plaintiff was in the employ of the defendant as a common laborer on defendant's dock No. 2. This dock covers about one block in area, and has a platform extending east and west along about two thirds of its northerly side. The platform is about sixteen feet in width and about twenty-

eight feet above the dock floor, and is covered by a roof from six to six and a half feet above the platform. This platform is inclosed on the north or river side and partly on the other side. It has a break or angle in its north side and a corresponding one in its south side, owing to the fact that it is built so as to conform to the river line. On the platform are tracks on which are run the tram cars used in conveying coal from hoppers located on the north side. The coal is hoisted to the hoppers from boats, and thence conveyed in the cars over this track on the platform and tramways extending above the dock floors where the coal is stored. These tramways are so narrow that but one person can pass over them with the tram cars to the place where they are emptied and thence returned to the platform. Any platform along the tramways would interfere with the dumping of the coal from the cars onto the dock.

Plaintiff on the day in question had been delivering coal about the city until 5 o'clock in the afternoon, at which time he went to work on this platform. He and one Mr. Eicher worked together running a tram car, which was being loaded at the hopper located farthest east. After the car was loaded they pushed it along the track on the platform, and from there they would alternate in taking the loaded tram car over the tram track, emptying it and returning it to the platform for the next loading, when the whole operation would be repeated. Plaintiff and Eicher worked there until 6 o'clock, when they took thirty minutes intermission for supper, and at half past 6 resumed their work and continued it up to the time of the accident.

Plaintiff had helped load the car and push it to the edge of the platform for Mr. Eicher to take out on the tramway to dump. He then started to pass along the platform to get a drink of water from near the power house at the western part of the platform. In doing so he started to walk westward along the track, but, meeting another loaded car, he

turned off and stepped to the side of the track and then attempted to cross another track. While in the act of stepping over the second track he tripped, pitched forward over the edge of the platform at the angle or break therein, and fell to the dock floor below, receiving serious injuries, namely, the breaking of the bones of his arm and jaw and the blinding of one of his eyes.

Plaintiff had been in the employ of the defendant on two different occasions prior to the accident, and for some time prior thereto, but he had never been engaged at work on the platform before he went there at 5 o'clock on that day. He stated that he had observed the platform from the dock below; that he knew, in a general way, from such view, how it was constructed; and that he had seen men at work passing to and from the tramway and platform with the cars. The platform had no railing or guard along the edge at the open sides. It was lighted by incandescent electric lamps of sixteen candle power, suspended from the roof over the platform, and from twenty to thirty feet apart. There was no railing or guard at the point where plaintiff fell from the platform. He stated that there was a light near the edge of the platform at the point where he left Eicher and turned to go for a drink, and that there was a light from the roof within about a foot of the place where he tripped and fell, and that he could see the floor and track at that place, but that he did not see the edge of the platform.

Upon the evidence adduced the court submitted the case to the jury, and the following special verdict was rendered:

"(1) Was there any want of ordinary care and prudence on the part of the defendant in failing to properly light the premises where the plaintiff was injured? *A.* Yes.

"(2) Was there any want of ordinary care and prudence on the part of the defendant in failing to erect a barrier or railing at the point where the plaintiff fell off the platform? *A.* Yes.

"(3) If you answer either of the above questions 'Yes,'

then was such want of ordinary care and prudence the proximate cause of plaintiff's injury? *A.* Yes.

"(4) Were the injuries complained of, and received by the plaintiff, occasioned by an accident not occurring by reason of negligence on the part of either party? *A.* No.

"(5) Was the platform upon which the plaintiff was set to work on the 18th day of May, 1903, a reasonably safe place for him to perform his work, if in the exercise of ordinary care and prudence himself? *A.* No.

"(6) Did want of ordinary care on the part of the plaintiff contribute to produce the injury? *A.* No.

"(7) If the court should be of the opinion that the plaintiff is entitled to recover, at what amount do you assess his damages? *A.* $8,000."

Plaintiff was awarded judgment on this verdict. Defendant's motion to set aside the verdict and for a new trial was denied, and it now asks that the judgment be reversed upon the grounds assigned as error in the case.

For the appellant there was a brief by *Vilas, Vilas, Jenner & Freeman,* and oral argument by *W. F. Vilas* and *C. A. Vilas.* They contended, *inter alia,* that statements made by plaintiff's counsel before the jury, under the guise of inquiring as to their qualification to act as jurors, but in fact intended to convey to them the information that the defendant was insured against loss in the event of a recovery against it, were necessarily, and were intended to be, prejudicial to the defense, and the refusal of the court to withdraw the case from the jury in whose presence such statements had been made, and to discharge the jury and impanel a new one, constituted error which required a reversal of the judgment, notwithstanding the instruction to the jury to disregard such statements. *Lipschutz v. Ross,* 84 N. Y. Supp. 632; *Wildrick v. Moore,* 66 Hun, 630; *Cosselmon v. Dunfee,* 172 N. Y. 507; *Manigold v. Black River T. Co.* 81 N. Y. App. Div. 381.

*Andrew Gilbertson,* attorney, and *J. E. McMullen,* of counsel, for the respondent.

SIEBECKER, J.   Plaintiff was awarded judgment upon a verdict which found that defendant failed in furnishing plaintiff a reasonably safe place to work, and that such negligence on defendant's part was the proximate cause of plaintiff's injuries and consequent damages.   The specific negligence found by the jury was that defendant was guilty of a want of ordinary care in failing to properly light the platform and in failing to erect a barrier or railing along the edge of the platform, from which plaintiff fell while he was engaged as an employee in conducting defendant's business. The question is, Do these findings furnish a legal ground for a recovery by the plaintiff, in view of the undisputed facts and circumstances of the case?   The facts material to a determination of this question appear in the foregoing statement of facts.

If plaintiff, as an intelligent and reasonably prudent man, ought to have observed the hazards of which he now complains, as incident to defendant's method of conducting its business, then no liability exists in his favor.   He was a man of experience and was familiar with the kind and nature of the work he was required to perform.   He was so situated and employed when he commenced working on the platform that slight attention to his surroundings would have informed him of the absence of a railing on the edge of the platform and of the danger incident to this condition.   The very situation was suggestive of the danger to which he was exposed in performing his services.   He is not relieved from the consequences of these assumed perils, under the condition of the dim and uncertain lighting of the platform as provided by the defendant.   If the platform was insufficiently lighted, this was a condition within his immediate observation before the accident happened, and continuing in the service he is presumed to have had full knowledge of the danger arising therefrom.

The evidence shows that plaintiff had a general knowledge

of the way in which the platform was constructed and the uses to which it was put, before he went to work upon it. It is also apparent that, while working on the platform from and after 5 o'clock in the afternoon of the day of the accident, he ought, as an intelligent and reasonably prudent man, to have observed that no railing or guard had been placed along the edge of the open side of the platform. He also had equal opportunity with defendant to fully inform himself before the accident occurred whether the platform was properly lighted for conducting defendant's business in the evening. It is well-settled law that when a servant has knowledge of obvious dangers and perils incident to his employment, or if he, as an intelligent and reasonably prudent man, ought to have observed and to have known them under the circumstances of his service, then he assumes the hazards incident to the business as it is being conducted. The fact that defendant may have conducted its business negligently in the respects mentioned in no way renders this rule inapplicable to the case, for it had the legal right to conduct its business in its own way, though a different and more prudent method might have prevented the dangers complained of. This is for the reason that if a servant agrees to undertake employment in a business being conducted in a certain way, he thereby assumes all the obvious dangers and hazards. In support of this rule we cite the following cases: *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573; *Larsson v. McClure,* 95 Wis. 533, 70 N. W. 662; *Naylor v. C. & N. W. R. Co.* 53 Wis. 661, 11 N. W. 24. In view of the facts established by the evidence, the finding of the jury that defendant was guilty of a want of ordinary care in failing to provide a railing on the platform and sufficient lights to safely conduct the business, furnishes no ground of actionable negligence, for, if the platform was unsafe in these respects, any dangers incident thereto were assumed by the plaintiff when he continued in the service. *Abbot v. McCadden,* 81 Wis.

563, 51 N. W. 1079; *Thompson v. E. P. Allis Co.* 89 Wis. 523, 62 N. W. 527; *Moulton v. Gage,* 138 Mass. 390; *Taylor v. Carew Mfg. Co.* 140 Mass. 150, 3 N. E. 21; *Hughes v. W. & St. P. R. Co.* 27 Minn. 137, 6 N. W. 553; *Wannamaker v. Burke,* 111 Pa. St. 423, 2 Atl. 500; *Foley v. Jersey City E. L. Co.* 54 N. J. Law, 411, 24 Atl. 487.

Exception was taken to several hypothetical questions asked physicians testifying as to plaintiff's injuries. The questions were put to ascertain whether or not the injuries to the skull were "likely" to result in recurrent troubles, or were "apt" to affect injuriously the other eye. The questions were framed to elicit the probabilities of future suffering as consequences of existing conditions. In *Hallum v. Omro,* 122 Wis. 337, 99 N. W. 1051, the bearing of such testimony was fully considered and the practice of admitting it approved. Any further discussion at this time is therefore needless.

Error is assigned upon a question propounded to one of the jurors, and upon the remarks of the court and of plaintiff's counsel respecting the same. At the examination of the juror Plank, on the *voir dire,* he was asked by plaintiff's counsel whether he was a stockholder in the Travelers Insurance Company. Defendant's counsel objected to the question as incompetent, immaterial, and improper, whereupon the court remarked that there was nothing to show that the insurance company was interested in the defense, but, if it was interested, the inquiry was proper. To this statement of the court defendant excepted, and it was suggested to the court that such statements by the court or counsel in the presence of jurors had been held highly improper and prejudicial. This was followed by further colloquy between the court and the counsel for both parties, wherein plaintiff's counsel suggested that defendants were insured by this insurance company. Upon objection to this remark the court ruled: "That objection is well taken. Suppose that they were; then what?"

To this inquiry of the court plaintiff's counsel responded by stating that the insurance company had undertaken to pay any judgment that might be recovered and he therefore deemed it proper to press the inquiry. Further objection was made to this statement, which the court, in the first place, overruled, and then immediately withdrew the ruling, saying: "I think we are wasting time. I think the safest way is to sustain the objection."

It is urged that this proceeding was highly prejudicial, and that any verdict, therefore, rendered in plaintiff's favor should not be permitted to stand. The objection reaches two aspects of the proceeding: First. Was it proper to inquire of the juror whether or not he was a stockholder in the insurance company? The record shows that plaintiff's counsel suggested to the court that they had been informed that the insurance company had a pecuniary interest in the outcome of the action. Under such circumstances it was material and proper to inquire of the juror whether or not he was pecuniarily interested in the insurance company. If he was so interested, that would disqualify him, and full opportunity should be given a party to ascertain that fact from a juror in the case. This rule is so clearly sanctioned that citation of authorities is well-nigh unnecessary. 17 Am. & Eng. Ency. of Law (2d ed.) 1131; 1 Thompson, Trials, §§ 101, 102; McLaughlin v. Louisville E. L. Co. 100 Ky. 173, 37 S. W. 851. But complaint is made that the court and plaintiff's counsel trespassed beyond the proper limits of such an inquiry in making the statements above mentioned within the jurors' hearing, because such remarks are in their nature so prejudicial that all subsequent efforts to withdraw them from being considered by the jury were of necessity fruitless. In support of this contention we are cited to the case of Lipschutz v. Ross, 84 N. Y. Supp. 632. The exception urged in this case pertained to the remarks of counsel made before the jury in connection with an inquiry as to

their pecuniary interest in an insurance company under cir-
cumstances like those before us. The court held that such
remarks constituted reversible error. We cannot give our
unqualified assent to such a ruling. As stated above, parties
have the legal right to ascertain whether or not jurors have
a pecuniary interest in the litigation, and the exercise of this
right necessarily authorizes them to elicit information from
them on this subject. This, however, in no way gives counsel
a license to communicate improper matters to the jurors, or
to the court within their hearing, in connection with such in-
quiry. Such an examination should be held strictly within
the limits of such right, and by direct question on the subject,
unaccompanied by suggestion or comment from counsel which
may convey improper and prejudicial information to jurors.
In the instant case it appears that a colloquy took place
between the court and counsel for both parties, following an
objection by defendant's counsel to a proper question, and
that all made statements concerning the subject matter of
this exception. The line of demarcation between prejudi-
cial and nonprejudicial remarks of this character cannot be
readily drawn. Each case depends largely upon the circum-
stances by which they are elicited, and their probable effect
upon the jurors. Taking all that occurred between the court
and counsel for both parties, in connection with the court's
rulings and subsequent instructions in regard thereto, we
are led to the conclusion that the statement of counsel that
the insurance company had insured defendant, made as it
was in response to the court's suggestion, does not constitute
reversible error.

Upon the ground first above stated the court should have
granted defendant's motion for a new trial.

*By the Court.*—The judgment of the circuit court is re-
versed, and the cause is remanded for a new trial.